## INDIANA v. KENTUCKY.

### ORIGINAL.

Argued April 27, 1896.—Decided May 18, 1896.

The report of the commissioners appointed October 21, 1895, 159 U. S. 275, to run the disputed boundary line between Indiana and Kentucky, is confirmed.

The commissioners appointed on the 21st day of October, 1895, 159 U. S. 275, to run the disputed boundary line between the States of Indiana and of Kentucky, reported as stated below. The State of Kentucky filed exceptions to the report. The State of Indiana moved to confirm it.

*Mr. William A. Ketcham,* Attorney General of the State of Indiana, for the motion.

*Mr. Richard H. Cunningham* opposing.

Mr. Chief Justice Fuller announced the decree of the court.

This cause came on to be heard on the report of Gustavus V. Menzies, Gaston M. Alves and Amos Stickney, commis-

sioners appointed herein at this term, on October 21, 1895, to ascertain and run the boundary line between the States of Kentucky and Indiana, as designated in the opinion of this court heretofore filed and judgment and decree heretofore entered herein, May 19, 1890, filed April 27, 1896; the exceptions of the State of Kentucky thereto and the motion of the State of Indiana for the confirmation thereof; and which report is as follows:

IN THE SUPREME COURT OF THE UNITED STATES.
October Term, 1895.

Indiana
  *vs.*
Kentucky.

*To the Honorable Melville W. Fuller, Chief Justice of the Supreme Court of the United States.*

The undersigned commissioners appointed by this honorable court in the above entitled cause, to ascertain and run the boundary line between the States of Indiana and Kentucky, north of the tract known as Green River Island, have the honor to present the following report:

The first meeting of the commission was held at Evansville, Indiana, on December 7, 1895, all the commissioners being present, and each commissioner having been sworn according to the order of the court, the commission organized by electing Lieut. Col. Amos Stickney, U. S. army, as chairman.

At this meeting there were present Mr. R. H. Cunningham, of Henderson, Ky., representing the State of Kentucky; Mr. Merril Moores, deputy attorney general of the State of Indiana, representing that State, and Mr. J. E. Williamson, of Evansville, Indiana, representing a number of land owners along the line where the boundary is to be ascertained and run.

The above mentioned gentlemen being invited thereto, expressed their views in a general way as to a proper method of determining the boundary line to be run between the States of Indiana and Kentucky to accord with the decision of this court. Neither in the order of your honorable court

appointing the commissioners, nor subsequently, were your commissioners instructed as to the methods they should pursue in ascertaining the boundary line to be run. They therefore assumed that it was the intention of the court to leave them untrammelled with instructions other than such as were to be inferred, first, from the decision of the court, and, second, from the testimony upon which that decision was made.

Your commissioners then proceeded to and made a personal examination of the grounds where the boundary line was to be ascertained and run. After this examination, and a consideration of the subject in the light of the court's decision, and the testimony, it was concluded that a determination of a proper location of the boundary line would require the marking out upon the ground as nearly as possible of the meandered river bank lines of the survey of Jacob Fowler, made in 1805 and 1806, the oldest survey of record, copies of the map and notes of which were incorporated and unchallenged in the testimony in the case.

A competent surveyor was employed in the person of Mr. C. C. Genung, surveyor of Vanderburgh County, Indiana, who was familiar with the county records and the landmarks in the vicinity of the proposed line. Mr. Genung was instructed to proceed as soon as possible under the direction of the chairman, to reëstablish upon the ground as nearly as practicable the aforesaid meander line of the survey of 1805 and 1806, using every precaution to determine said line as accurately as might be, from the notes of the survey, and such marks referred to in the notes, and other authenticated marks as might be found.

He was also directed to make cross sections at intervals, by levelling across the depression now existing, where the island chute once was, and determine the present crests of the banks.

Mr. Genung performed the duty allotted to him, and made a map exhibiting the result of his surveys.

Your commissioners, after verifying his work on the ground, then held another meeting at Evansville, Indiana, January

Decree of the Court.

22nd, 1896, and made a careful study of the information obtained by the survey. An examination of the map presented by Mr. Genung, giving the results of his survey, with a report upon the same, satisfied your commissioners on three points. The close accord of the reëstablished meander line with the existing crest of the high bank was strong proof that the line as reëstablished was in fact a very close approximation in location to the location of the line as originally run; it also indicated that the original meander line was practically along the crest of the high water bank, and not along the low water line; and further, that the crest of the bank along the Indiana side of the depression as it exists to-day must be nearly as it was at the time of the original survey.

It will be noticed from the topography on the map that the crest of the high water bank on the Indiana side of the depression is quite regular, while the crest of the bank on the island side, especially above the railroad crossing, is irregular, indicating probably, extensive deposits since the time when there was a free flowing stream around the island. In the testimony there are mentions of drift piles in the upper part of the chute causing deposits.

Below the railroad crossing the crests of the two banks are nearly parallel, and as scaled on the map where most nearly parallel, are about eight chains apart. It would seem probable that the chute before it was choked up by drifts and deposits had a width more or less uniform of about eight chains between crests of the high bank. During low water stages the part of the chute covered by water was probably nearly in the centre of the chute. Just how far the low water surface extended towards the Indiana side, it is impossible at this time to determine accurately, but it would seem that a close approximation to the water line would be a line equidistant from the Indiana bank crest line and the central line of the chute. Upon this assumption, the water of a low stage would have covered the middle half of the space between the crest of the high banks, and a fair allowance should be made for the space covered by the bank slopes extending from the crests of the high banks to the low water line.

It was decided then, to lay out as a trial line, a line parallel to the meander line of the survey of 1805 and 1806, as re-established, and at a distance of two chains from it, measured toward the island.   This was done, and notification was sent to Hon. W. A. Ketcham, attorney general of the State of Indiana; Mr. R. H. Cunningham, representing the State of Kentucky, and Mr. J. E. Williamson representing land owners. The above mentioned gentlemen were invited to present in writing, if they so desired, any statements to prove that such line was not approximately the low water line in the year 1792.   They were also invited to make any oral argument relating thereto to your commissioners at their next meeting.

On February 3rd, 1896, your commissioners again met at Evansville, Indiana, and proceeded to inspect the trial line as laid out and marked upon the ground.   After their inspection they held a meeting, due notice of which had been given to the aforementioned gentlemen representing the different interests.

Mr. R. H. Cunningham on behalf of the State of Kentucky appeared, and had no particular objections to urge against the approximate line, but filed a request which is herewith transmitted, marked Exhibit "A."   Mr. J. E. Williamson sent a communication, which is transmitted with this report and marked Exhibit "B."

After further consideration of the subject it was decided that your commissioners were not authorized to lay down any line beyond the upper and lower limits of Green River Island as it existed in 1792, and it was decided to adopt for recommendation the trial line within those limits as marked, with a slight change at the extreme upper end, to allow for what was undoubtedly a flat bank slope, it being upon a point.

Your commissioners would therefore respectfully state that they have now ascertained and run, according to their best judgment, the boundary line between Indiana and Kentucky, north of the tract known as Green River Island as it existed when Kentucky became a State, which is described as follows, to wit:

Commencing at a point on the line between sections fifteen (15) and fourteen (14), township seven (7) south, range ten (10) west, and 67.25 chains south of the northeast corner of section fifteen (15). The post set at this point is witnessed by a sycamore tree 36 inches, S. 1° 55' E. 43.8 ft.; and also by a honey locust 32 inches, S. 67° 50' E. 24.1 ft., and is at the head of Green River Island, and also assumed low water mark in 1792. From this point going down stream and making an angle to the left from the east line of section fifteen (15) of 50° 26', and on a course of N. 49° 16' W., a distance of 1098.55 ft. to a post witnessed by a cottonwood 48 inches, N. 79° 45' W. 163 ft.

Angle to right 0° 45' 15", course N. 48° 30' 45" W. 1171.45 ft. to a post witnessed by a sycamore 22 inches. S. 66° 50' E. 398 ft.

Angle to left 6° 50', course N. 55° 20' 45" W. 1432.35 ft. to a post, witnessed by a red elm 48 inches, S. 81° 40' E. 150.5 ft. And also a red elm 60 inches, S. 83° 20' E. 160 ft.

Angle to left 13° 43' 15" course N. 69° 04' W. 1187.2 ft. to a post, witnessed by a sycamore 41 inches, S. 87° 15' E. 149.7 ft.; and also a sycamore 48 inches, S. 88° 20' E. 156.2 ft.

Angle to right 0° 42' course N. 68° 22' W. 1312.6 ft. to a post, witnessed by a sycamore 15 inches, south 16° 15' E. 80.5 ft. And a sycamore 11 inches, S. 18'[°] 00' E. 79.6 ft.

Thence on same tangent and course 520.55 ft. to a post, witnessed by a cottonwood 16 inches, S. 8° 45' E. 61.4 ft.

Angle to right 9° 01' 30", course N. 59° 20' 30" W. 1735 ft. to a post, witnessed by a sycamore 64 inches, N. 13° 40' W. 130 ft.

Angle to left 2° 37', course N. 61° 57' 30" W. 964.6 ft. to a post, witnessed by a cottonwood 30 inches, S. 44° 00' W. 67 ft., and a cottonwood 37 inches, S. 34° 40' W. 70.3 ft.

Angle to right 2° 06', course N. 59° 51' 30" W. 2926.5 ft. to a post, witnessed by a sycamore 48 inches, N. 74° 50' E. 146.5 ft. and a sycamore 56 inches, N. 27° 30' E. 94.8 ft., and a stone on section line, between sections eight (8) and nine (9), N. 32° 30' E. 132.6 ft.

Angle to right 4° 36' 30", course N. 55° 15' W. 1659.6 ft. to

a post, witnessed by a cottonwood 22 inches, S. 17° 15' W. 141.7 ft.

Angle to right 3° 05' 30", course N. 52° 09' 30" W. 952 ft. to a post, witnessed by a sycamore 60 inches, S. 88° 05' E. 254 ft., and a sycamore snag 31 inches, N. 49° 25' E. 164.4 ft.

Angle to right 7° 56' 30", course N. 44° 13' W. 2004.1 ft. to a post, witnessed by an elm 60 inches, N. 2° 35' E. 230.5 ft.

Angle to right 5° 58', course N. 38° 15' W. 477.65 ft. to a post, witnessed by a sycamore 56 inches, N. 29° 45' E. 115 ft.

Angle to left 0° 40', course N. 38° 55' W. 1259 ft. to a post, witnessed by a sycamore 36 inches, S. 44° 55' E. 131.3 ft., and a cottonwood 40 inches, S. 42° 50' W. 155 ft.

Angle to right 6° 07', course N. 32° 58' W. 1257 ft. to a post, witnessed by an elm 53 inches, S. 43° 25' E. 578 ft. and the stump of the original maple witness tree of 1806, 65 inches, N. 49° 55' E. 126 ft.

Angle to right 2° 42', course N. 30° 06' W. 1186.6 ft. to a post, witnessed by a sycamore snag 28 inches, N. 69° 15' E. 102.7 ft.

Angle to right 7° 03' 30", course N. 23° 42' 30" W. 2735.7 ft. to a post, witnessed by a maple 36 inches, N. 78° 00' E. 165.3 ft.

Angle to right 12° 17' 30", course N. 10° 45' W. 1202.12 ft. to a post opposite the lower end of Green River Island, and at low water as it was in 1792, witnessed by a sycamore 52 inches, N. 65° 35' E. 363.45 ft.

The above courses are run from the true meridian as ascertained by observation at the point on the map marked "W" on the line between townships six (6) and seven (7).

The above described line is indicated by the red line on the map transmitted herewith, marked Exhibit "C." We also transmit the preliminary and final reports of the surveyor, Mr. C. C. Genung, marked Exhibits "D" and "E," also a sheet of cross sections marked Exhibit "F."

The above described line is now marked by cedar posts, set at the initial and terminal points, and points where changes in direction occur, and it is recommended that it should be permanently marked as follows:

Decree of the Court.

Three suitable points should be selected upon the line, one near the upper end, one near the middle, and one near the lower end. At each of these points a monument should be erected which should consist of a stone of durable quality, six feet long, and eighteen inches square in cross section. This stone should be imbedded in a well made foundation of concrete. The concrete foundation to be six feet square and four feet deep, the upper surface being at the surface of the ground. The stone should be placed upright so as to extend three feet into the concrete, and have three feet above the ground. Upon one side of the stone should be cut the word "Indiana," and upon the opposite side the word "Kentucky." Between the stone monuments, at each turning point of the line, there should be placed an iron post six feet long, and six inches in diameter of cross section. The iron post to be imbedded in a foundation of concrete two feet square, and three and one half feet deep; the top of the concrete to be at the surface of the ground, and the post standing upright in the concrete, the top of the post being three feet above the ground.

The estimated cost of the above described monuments, including placing the same, is $600.00.

We herewith file as a part of our report, two certified copies of the original map, which we recommend be furnished the respective States, as may be directed by the court.

We herewith attach an itemized statement of costs and expenses incurred by the commissioners, marked Exhibit " G," which, if approved, we recommend be adjudged equally against the parties to the suit.

Respectfully submitted.

AMOS STICKNEY,
*Lt. Col. of Engrs., U. S. A.*
GUSTAVUS V. MENZIES,
GASTON M. ALVES,
*Commissioners.*

EXHIBIT "A."

*Honorable Commissioners of U. S. Supreme Court to ascertain and run the boundary line between Indiana and Kentucky at and near Green River Island.*

GENTLEMEN: While I have no special objection to the test line you have tentatively adopted, although it does not seem to make allowance for any accretion to the Indiana bank of the river between June 1st, 1792, and the date of the Congressional survey in 1806, I suggest and request that such line as you may finally adopt be extended upon such course and for such distance as you find correct until it intersects the present low water line of the Ohio River both at the upper and lower ends. In other words that you run at each end to the points where low water mark in 1792 coincides with low water mark at the present time.

Very respectfully,

R. H. CUNNINGHAM,
*For the Commonwealth of Kentucky.*

February 3d, 1896.

EXHIBIT "B."

EVANSVILLE, IND., Feb. 2, 1896.

COL. AMOS STICKNEY, Evansville, Ind.

DEAR SIR: I was shown a sketch, by Capt. Genung, of the line as staked off. Capt. Genung said to me that he had a letter from you stating that you would be in the city to-morrow, and that the commission would meet to-morrow night. I am compelled to leave home to-night, and will probably not be at home for a day or two. Capt. Genung will explain fully.

The line as staked off in the main will be satisfactory. I desire to call the attention of the commission to the two termini. I understand the controlling fact has been the survey of 1806, and the notes of this survey show that stakes were driven at several points on the bank of the river. If we take the dividing line between sections 14 and 15 as a sample, the notes show that a stake was driven on the bank of the river between the point where the stake was driven and the

present bank of the river is a very considerable distance, and the evidence shows that a great deal of land has been made by accretion opposite the mouth of Green River. If we take an east and west line, or say the northern boundary line of section 14 and measure off the full length of the east side we have the distance shown by the stake driven. If we were to go one section still further east, a point which nobody has ever claimed was reached by Green River Island, we will have exactly the same thing, a stake on the bank of the Ohio River, and I assume the same notes would show stakes on the Ohio River up to the Ohio line. It does not follow therefore that all the land that has been made south of these stakes is in Kentucky. The same thing holds good at the lower end of the line. Only sixty days ago I passed on an abstract of title for a tract of land belonging to the Smiths immediately down the river from the present site owned by the city for its water works. We commenced on a line back from the river and the calls in the deed were so many feet to the Ohio River, when we measured for the number of feet, we found that it did not reach the Ohio River by one hundred or two hundred feet. I thought at first there was a mistake in the deed, but when we came to ascertain the facts more definitely, it was learned that the difference in feet was accounted for by the accretion. I am confident that the same will hold at many other points along the river. It seems, therefore, to me that we cannot rely on calls of the survey of 1806 to locate the upper and lower ends of the island, as there have been accretions at both points.

Yours respectfully,      J. E. WILLIAMSON.

· EXHIBIT "D."

*To the Honorable Board of Commissioners of the Indiana and Kentucky Boundary Line at Green River Island.*

GENTLEMEN: In accordance with your instructions I have reëstablished the sectional and meander lines of fractional sections, 5, 6, 8, 9, 15, 16 and a part of 14 T. 7 S., R. 10 W., and also a part of section 31, T. 6 S., R. 10 W. following the notes of the original United States surveys as made by Jacob Fowler

in 1805 and 1806, as closely as possible. I found, however, that his work had not been very carefully nor accurately done, his lines not having all been run with the same variation, nor his distances always accurately chained.

I first sought to locate his original corners, the posts set by him having long since disappeared. I found a mulberry stub standing on the line between sections 15 and 16, and 16.23 chains south of the northwest corner of sec. 15, which is an original witness tree, as noted by him. At the termination of the section line between sections 5 and 6 a maple tree witnessed by him has been standing, up to about one year ago, but the stump, now five feet in diameter, with witness marks on it, is still there. Each of these points so located are also points on the meander line, and the surveyor's records in my office, as well as oral testimony of the old inhabitants, go to show beyond question that these are corners established by Mr. Fowler.

In 1856 A. T. Whittlesey, who was surveyor of Vanderburgh County, reëstablished the northwest corner of sec. 14, putting down a cypress post, which he afterwards replaced by a stone, which now marks the corner. One of the original witness trees was then standing. At the same time he reestablished a point on this line between sections 14 and 15 and 40 chains south of the northwest corner of sec. 14, by a cedar post which is still standing. At that point one of the original witness trees was then standing. The distance was by close measurement 39.91 chains. This line produced south from said northwest corner of sec. 14 64.25 chains, the distance given by Mr. Fowler, fixes its termination and also a point on the meander line. The variation is 2° 30'.

The northeast corner of sec. 16 was reëstablished by A. T. Whittlesey, surveyor of Vanderburgh County, in 1856. The box elder witness tree noted by Mr. Fowler was standing at that time. From that corner running west 29.67 chains the distance given by Mr. Fowler, gives the termination of the section line between sections 9 and 16, which is also a point on the meander line. The northeast corner of sec. 16 is also 16.23 chains north of the corner by the mulberry stub, this

being the distance given by Mr. Fowler, and has a variation of 3° 40'.

At the northwest corner of sec. 9, J. Lindsley, surveyor of Vanderburgh County, in 1837, set a white oak post to reëstablish the corner, the original witness trees being then standing. In 1855 C. G. Olmstead, surveyor of Vanderburgh County, replaced the oak post by a mulberry post, and in 1874 this was replaced by a limestone, set by August Pfafflin, surveyor of Vanderburgh County, which stone is still there. Commencing at that point and running south 49.84 chains, the distance given by Mr. Fowler, I found the termination of the line between sections 8 and 9, which is also a point on the meander line. This variation is 3° 30'.

Running west from the northwest corner of section 9, 58.00 chains, the distance given by Mr. Fowler, gives the termination of the line between sections 5 and 8, and also a point on the meander line.

The southwest corner of sec. 32, T. 6 S., R. 10 W. I established from two old monuments, one at the northwest corner, and the other at the southeast corner of said section. This line between the southeast and southwest corners had a variation of 2° 50'. From this corner so established, I ran south 51.72 chains to a post near the maple stump, original witness tree, Mr. Fowler giving the distance as 51.50 chains. This line had a variation of 3° 00', and its termination is also a point on the meander line. From the southwest corner of sec. 32 I ran west 25.70 chains, the distance given by Mr. Fowler, which is the termination of the line between section 31, T. 6 S., R. 10 W., and section 6, T. 7 S., R. 10 W., and also a point on the meander line.

In this way I found seven points which are as closely absolutely correct as it is possible to locate them after a lapse of ninety years. Primarily fixed points, if correct, must govern as against distances or compass variations, secondly, distances, and lastly, courses. Upon this basis I ran the meander line, following Mr. Fowler's notes as closely as possible, and making such corrections as were necessary. It was impossible to follow them exactly, for the reasons already stated, that the

compass variations on the lines between section corners established by Mr. Fowler vary from one to two degrees, and in only one instance has a line the correct variation, and in 28 distances given by him, which I remeasured, 12 of them varied from two to seventy-four links each.

The following are the field-notes for the meander line:

Commencing at a post at a point on the bank between fractional sections 9 and 16, T. 7 S., R. 10 W., running thence up stream as corrected. Witnessed sycamore 6' N. 82° W. 1.31 chains S. 60° E. 26.31 chains. Variation 3° 05'.

Post witnessed, sycamore S. 12° 50' E. 4 links S. 69° E. 7.73, var. 3° 05' to a post between secs. 15 & 16.

Witnessed by stub of original mulberry S. 66° W. 4 links S. 69° E. 19.84, var. 3° 15'.

Post witnessed, stake N. 43° 30' E. 25 links, and stake N. 36° 30' W. 25 links. S. 70° E. 18.38, var. 3° 15'.

Post witnessed, stake N. 44° 30' E. 45½ links and apple tree S. 63° W. 28 links. S. 56° E. 22.01, var. 3° 15'.

Post witnessed, stake, N. 43° 30' E., 50 links, and stake N. 36° 30' W. 50 links. S. 49° E. 17.91 var. 3° 15'.

Post witnessed, stake, N. 40° 50' E. 65 links and stake N. 66° 30' W. 50 links. S. 45° E. 9.92, var. 3° 15'.

Post witnessed, stake, N. 40° 20' E. 68 links and stake N. 66° 30' W. 50 links. S. 63° E. 5.00 var. 3° 15' to a post between secs. 15 & 14.

Witnessed, honey locust 24" S. 8° 15' W. 78 links. Sec. line S. 6.37 ch. to water's edge of Ohio River. S. 73° E. 5.50, var. 3° 15'.

Post witnessed, cottonwood, 16" S. 14° 50' W. 1.71 ch. S. 82° E. 16.00, var. 3° 15'.

Post witnessed, osage orange 6" S. 54° 45' E. 26½ links and osage orange 8" S. 62° W. 36½ links. S. 3.88. ch. to water's edge, Ohio River.

From the post between secs. 9 and 16 running down stream: N. 63° W. 14.60 chains, var. 2° 45'.

Post witnessed, sycamore snag, 36" N. 81° 55' E. 86½ links N. 61° W. 44.00 to a post between secs. 8 and 9, var. 2° 45'.

Post witnessed sycamore 48" S. 45° 30' W. 54 links N. 57° W. 25.00, var. 2° 00'.

Post, sycamore stump 40″ S. 42° 30′ E. 72 links N. 54° W. 14.20 var. 2° 00′.

Post witnessed sycamore snag N. 78° E. 56 links N. 46° W. 30.00, var. 2° 00′.

Post witnessed, elm, 38″ N. 31° 40′ W. 2.53 chains N. 40° W. 7.12, var. 2° 00′. Post between secs. 5 and 8.

Witnessed sycamore 40″ S. 74° 50′ W. 21½ links, and cotton-wood snag 21″ N. 40° 30′ W. 80 links. N. 40° W. 19.00, var. 2° 30′.

Post witnessed, sycamore, 32″ S. 4° 15′ W. 2.56 ch. N. 34° W. 18.84 to a post between secs. 5 and 6, var. 2° 30′.

Post witnessed, maple 60″ N. 65° W. 27 links, Original witness tree. N. 32° W. 17.75 to a post, var. 2° 00′.

Post witnessed, sycamore snag 45″ S. 43° 15′ W. 16 links N. 25° W. 40.00 to a post between sec. 6, T. 7 S., R. 10 W., and sec. 31, T. 6 S. R. 10 W., var. 2° 00′.

Post witnessed, maple snag, 20″ N. 66° 30′ E. 53 links, and maple 24″ S. 83° 30′ E. 52 links. N. 12° W. 36.00 to a post, var. 2° 30′.

Witness stake on river bank S. 78° W. 4.70 ch. and post N. 78° E. 4.00. Distance 5 chains S. 78° W. to water's edge, Ohio River.

At points marked A, B, C, etc., corresponding to the same letters on the map, cross section levels were taken across the meander line to the bank on the southwest side of the slough, taking low water mark on the gauge at Evansville as the base, and from the section line between secs. 14 and 15 to the point where meander line ends in section 31, T. 6 S., R. 10 W. The difference of elevation in the water surface at those extreme points is 16 inches.

Accompanying this report is a map of the lands lying between Evansville and a point opposite the mouth of Green River on a scale of 10 chains to an inch, showing section and meander lines, and the topography near the meander line, and marked Exhibit " C." Also a cross section of the levels taken, marked Exhibit "F."

Respectfully submitted.    C. C. GENUNG.

Jan'y 22d, 1896.    *C. E. and S. V. C.*

EXHIBIT "E."

*To the Honorable Board of Commissioners, on the Indiana
and Kentucky Boundary Line at Green River Island.*

GENTLEMEN: The line of the low water mark of 1792, from
the head to the foot of Green River Island, has been located
as ordered by you, and the commencement, terminus and each
intermediate angle marked by planting a cedar post five inches
square and seven feet in length in the ground to the depth of
four and one half feet. The line is, except at the commence-
ment and ending, two chains (132 feet) to the left of the
meander line going down stream, and parallel thereto. The
angles, checked by the needle, were taken twice, and each
distance carefully measured twice to avoid the possibility of
errors. The line is laid down on the map marked "Exhibit
C" in red ink, and the distances are given in feet. The true
meridian was obtained by observation of Polaris on two dif-
ferent nights.

The following are the notes of the location:

Commencing at a point on the line between sections fifteen
(15) and fourteen (14), township seven (7) south, range ten (10)
west, and 67.25 chains south of the northeast corner of section
fifteen (15). The post set at this point is witnessed by a syca-
more tree 36 inches, S. 1° 55' E. 43.8 ft.; and also by a honey
locust 32 inches, S. 67° 50' E. 24 ft., and is at the head of Green
River Island, and also assumed low water mark in 1792. From
this point going down stream and making an angle to the left
from the east line of section fifteen (15) of 50° 26', and on a
course of N. 49° 16' W., a distance of 1098.55 ft. to a post wit-
nessed by a cottonwood 48 inches, N. 79° 45' W. 163 ft.

Angle to right 0° 45' 15", course N. 48° 30' 45" W. 1171.45
ft. to a post, witnessed by a sycamore 22 inches, S. 66° 50' E.
398 ft.

Angle to left 6° 50', course N. 55° 20' 45" W. 1432.35 ft. to
a post, witnessed by a red elm 48 inches S. 81° 40' E. 150.5 ft.
And also a red elm 60 inches, S. 83° 20' E. 160 ft.

Angle to left 13° 43' 15", course N. 69° 04' W. 1187.2 ft. to
a post witnessed by a sycamore 41 inches, S. 87° 15' E. 149.7
ft.; and also a sycamore 48 inches, S. 88° 20' E. 156.2 ft.

Angle to right 0° 42', course N. 68° 22' W. 1312.6 ft. to a post, witnessed by a sycamore 15 inches, S. 16° 15' E. 80.5 ft., and a sycamore 11 inches S. 18° 00' E. 79.6. ft.

Thence on same tangent and course 520.55 ft. to a post, witnessed by a cottonwood 16 inches, S. 8° 45' E. 61.4 ft.

Angle to right 9° 01' 30", course N. 59° 20' 30" W. 1735 ft. to a post, witnessed by a sycamore 64 inches, N. 13° 40' W. 130 ft.

Angle to left 2° 37', course N. 61° 57' 30" W. 964.6 ft. to a post, witnessed by a cottonwood 30 inches S. 44° 00' W. 67 ft., and a cottonwood 37 inches, S. 34° 40' W. 70.3 ft.

Angle to right 2° 06', course N. 59° 51' 30" W. 2926.5 ft. to a post, witnessed by a sycamore 48 inches, N. 74° 50' E. 146.5 ft. Also a sycamore 56 inches, N. 27° 30' E. 94.8 ft., and a stone on section line, between sections eight (8) and nine (9) N. 32° 30' E. 132.6 ft.

Angle to right 4° 36' 30", course N. 55° 15' W. 1659.6 ft. to a post, witnessed by a cottonwood 22 inches, S. 17° 15' W. 141.7 ft.

Angle to right 3° 05' 30", course N. 52° 09' 30" W. 952 ft. to a post, witnessed by a sycamore 60 inches, S. 88° 05' E. 254 ft. and a sycamore snag 31 inches, N. 49° 25' E. 164.4 ft.

Angle to right 7° 56' 30", course N. 44° 13' W. 2004.1 ft. to a post witnessed by an elm 60 inches, N. 2° 35' E. 230.5 ft.

Angle to right 5° 58', course N. 38° 15' W. 477.65 ft. to a post, witnessed by a sycamore 56 inches, N. 29° 45' E. 115 ft.

Angle to left 0° 40', course N. 38° 55' W. 1259 ft. to a post, witnessed by a sycamore 36 inches, S. 44° 55' E. 131.3 ft., and a cottonwood 40 inches, S. 42° 50' W. 155 ft.

Angle to right 6° 07' course N. 32° 58' W. 1257 ft. to a post, witnessed by an elm 53 inches, S. 43° 25' E. 578 ft. and the stump of the original maple witness tree of 1806, 65 inches, N. 49° 55' E. 126 ft.

Angle to right 2° 42', course N. 30° 06' W. 1186.6 ft. to a post, witnessed by a sycamore snag 28 inches, N. 69° 15' E. 102.7 ft.

Angle to right 7° 03' 30", course N. 23° 42' 30" W. 2735.7 ft. to a post, witnessed by a maple 36 inches, N. 78° 00' E. 165.3 ft.

Angle to right 12° 17' 30'', course N. 10° 45' W. 1202.12 ft. to a post opposite the lower end of Green River Island, and at low water as it was in 1792, witnessed by a sycamore 52 inches, N. 65° 35' E. 363.45 ft. The above courses are run from the true meridian as ascertained by observation at the point on the map marked "W" on the line between township six (6) and seven (7).

Respectfully submitted.

C. C. Genung,

Feb'y 3d, 1896.                    C. E. and S. V. C.

### Exhibit "G."
#### Statement of Costs and Expenses.

| | | |
|---|---:|---:|
| C. C. Genung, civil engineer, services rendered by order of the commission........ | | $575 75 |
| Expenses of Lieut. Col. Amos Stickney, U. S. A., commissioner ................ | $64 60 | |
| Services as member of the commission ..... | 500 00 | 564 60 |
| Expenses of Gaston M. Alves, commissioner | 20 00 | |
| Services as member of the commission .... | 500 00 | 520 00 |
| Expenses of Gustavus V. Menzies, commissioner................................ | 20 00 | |
| Services as member of the commission ..... | 500 00 | 520 00 |
| F. A. Guthrie, typewriter ................ | | 15 00 |
| Kellar Printing Company ................ | | 41 25 |
| Total ....................................... | | $2236 60 |

And the court being now fully advised in the premises:

It is ordered that the exceptions to the report of said commissioners be overruled and that the report of said commissioners be, and the same is hereby, confirmed.

And it is ordered, adjudged, and decreed that the boundary line between said States of Indiana and Kentucky in controversy herein be, and it is hereby, established and declared to be as delineated and set forth in said report and the map accompanying the same and referred to therein, which map is hereby directed to be filed as a part of this decree.

It is further ordered, adjudged, and decreed that the said

boundary line as described in said report and as delineated on said map, and now marked by cedar posts, be permanently marked as recommended in said report, with all convenient speed, and that said commission be continued for that purpose, and make report thereon to this court, and that this cause be retained until such report is made.

It is further ordered, adjudged, and decreed that the compensation and expenses of the commissioners and the expenses attendant on the discharge of their duties, up to this time, be, and they are hereby, allowed at the sum of two thousand two hundred and thirty-six dollars and sixty cents in accordance with their report, and that said charges and expenses and the costs of this suit to be taxed be equally divided between the parties hereto.

And it is further ordered, adjudged, and decreed that this decree is without prejudice to further proceedings as either of the parties may be advised for the determination of such part of the boundary line between said States as may not have been settled by this decree under the pleadings in this case.

And it is further ordered, adjudged, and decreed that the clerk of this court do forthwith transmit to the chief magistrates of the States of Kentucky and Indiana copies of this decree duly authenticated under the seal of this court.

per Mr. CHIEF JUSTICE FULLER.