Robert K. BENHAM, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 78S01–9406–CR–596.

Supreme Court of Indiana.

June 30, 1994.

Joseph A. Colussi, Mary Beth Mock, Colussi Law Office, Madison, for appellant.

Pamela Carter, Atty. Gen., Suzann Weber Lupton, Deputy Atty. Gen., Indianapolis, for appellee.

## ON PETITION TO TRANSFER

DICKSON, Justice.

This interlocutory appeal challenges the trial court's denial of defendant Robert K. Benham's motion to dismiss criminal charges arising from a double-fatality boating incident on the Ohio River. The Court of Appeals affirmed the denial, concluding that "Indiana may enforce its laws on the Ohio River from the Indiana shore to the Kentucky shore." *Benham v. State* (1993), Ind. App., 622 N.E.2d 982, 987.

On August 8, 1991, the defendant and two other persons fell into the Ohio River near the Kentucky shore when their pontoon boat capsized. Two of the three drowned, and the defendant was rescued and taken to Switzerland County, Indiana, where the following day he was charged with two counts of reckless homicide, a class C felony; two counts of involuntary manslaughter, a class C felony; two counts of operating a watercraft while intoxicated causing death, a class C felony; and one count of operating a watercraft while intoxicated, a class C misdemeanor.

The defendant filed a motion to dismiss all charges against him, contending that Indiana lacked the sovereign authority to prosecute criminal activity allegedly occurring within the territorial boundaries of Kentucky.[1] The motion was not accompanied by any affidavits or other matters outside the pleadings to affirmatively establish the precise location of the alleged criminal conduct. The language of Counts I through IV, charging reckless homicide and involuntary manslaughter, each describe the location of the charged offense either as "in Florence, Switzerland County, Indiana" or "in Florence, Switzerland County." Record at 6–9. Counts V and VII, charge the defendant with operating a watercraft while intoxicated "at Ohio River above Markland Dam" resulting in death. Record at 10, 12. Count VI, charging operating a watercraft while intoxicated, specifies the location only as "in Switzerland County, Indiana." Record at 11. Following a hearing on the motion consisting solely of argument of counsel, the trial court overruled the motion to dismiss and made express findings of fact, including that "the offense alleged occurred on the Ohio River at a location easterly in direction from the low water mark off of the Indiana shore of said Ohio River." Record at 53.

1. It is undisputed that Indiana's southernmost territorial boundary along the Ohio River is established by the low-water line on the northern side of the river in 1792, the year Kentucky became a state. *See Indiana v. Kentucky* (1896), 163 U.S. 520, 16 S.Ct. 1162, 41 L.Ed. 250, and *Handly's Lessee v. Anthony* (1820), 18 U.S. (5 Wheat.) 374, 5 L.Ed. 113.

The defendant thereafter petitioned for interlocutory appeal of the order denying the motion to dismiss. The petition included the assertion that the boating incident "occurred to the south of the boundary line of the State of Indiana and did not occur within the State of Indiana." Record at 56. The trial court certified its Order on Motion to Dismiss for interlocutory appeal, and the Court of Appeals accepted the appeal. Indiana Appellate Rule 4(B)(6). In accordance with Indiana Appellate Rule 7.3, the parties thereafter submitted an agreed statement of the case, but such statement fails to clarify whether the alleged conduct constituting the charged offenses occurred on the Indiana or the Kentucky side of the territorial boundary. The only facts in the agreed statement pertinent to determining the place of the offense were the following:

1. On August 8, 1991, a boating accident occurred at the mouth of Craig's Creek which is located in the Commonwealth of Kentucky as it enters the Ohio River east of the Markland Dam during a storm. The accident resulted in Robert Benham, Beatrice Rogers and Timothy Rogers being thrown into the water from a pontoon boat.

2. Authorities from Boone County, Kentucky, and Kenton County, Kentucky, searched for and recovered the bodies of Beatrice Rogers and Timothy Rogers.

\* \* \* \* \* \*

10. The Certificates of Death issued by the Commonwealth of Kentucky for both persons identified the location of their deaths as Warsaw, Gallatin County, Kentucky.

Record at 3.[2]

The Court of Appeals treated this interlocutory appeal as presenting the issue of whether Indiana may "prosecute a defendant for criminal acts on the Kentucky side of the Ohio River," *Benham,* 622 N.E.2d at 983. We grant transfer to address this issue but view the essential question presented in this appeal to be whether the trial court erred in overruling the motion to dismiss charges alleging Indiana criminal offenses which may have occurred outside the Indiana territorial boundary on the Ohio River.

### *Indiana Territorial Jurisdiction*

When the State of Indiana seeks to enforce its criminal laws by prosecuting conduct that occurs on the Ohio River but on the Kentucky side of Indiana's southern territorial boundary, there are two separate issues. The first is whether Indiana is authorized to exercise concurrent jurisdiction over the entire Ohio River, including that portion beyond Indiana's territorial boundaries. If such right to concurrent jurisdiction exists, a second question arises: whether the Indiana General Assembly has authorized criminal prosecutions to the full extent of such potential concurrent jurisdiction.

■ Concurrent jurisdiction on rivers is the jurisdiction of two powers over one and the same place. *Nielsen v. State of Oregon* (1909), 212 U.S. 315, 317, 29 S.Ct. 383, 384, 53 L.Ed. 528, 529. Concurrent Indiana jurisdiction over the Ohio River has been contemplated by both state and federal law. In 1784, Virginia conveyed its territory northwest of the Ohio River to the United States. In 1789, the Virginia Compact, enacted by the Virginia legislature, ceded territory for the formation of the Commonwealth of Kentucky. The Virginia Compact provided for the creation of Kentucky upon the condition, *inter alia,* "that the use and navigation of the river Ohio, so far as the territory of the proposed state, or the territory which shall remain within the limits of this commonwealth lies thereon, shall be free and common to the citizens of the United States, and the respective jurisdictions of the Commonwealth and of the proposed state on the river as aforesaid, shall be concurrent only with the states which may possess the opposite shores of the said river." *Wedding v. Meyler* (1904), 192 U.S. 573, 581–82, 24 S.Ct. 322,

**2.** The State expressly refuses to concede "the precise location on the Ohio River where the incident occurred, as that remains a question of fact," but is willing to assume, solely for the purpose of argument regarding the concurrent jurisdiction issue, the defendant's contention that the incident occurred south of the 1792 low water mark. State's Brief in Opposition To Transfer at 1 n. 1.

323, 48 L.Ed. 570, 574 (citing Virginia Compact, 13 Hening, St. at L. 17). "What the Virginia compact most certainly conferred on the States north of the Ohio, was the *right* to administer the law below low-water mark on the river...." *Wedding,* 192 U.S. at 584, 24 S.Ct. at 324, 48 L.Ed. at 575 (emphasis added). In 1791, the United States Congress ratified the Virginia Compact, pursuant to Article 4, § 3 of the United States Constitution. In *Commonwealth of Kentucky v. State of Indiana* (1985), 474 U.S. 1, 2, 106 S.Ct. 304, 304, 88 L.Ed.2d 1, 1, the United States Supreme Court confirmed that Indiana and Kentucky "each have concurrent jurisdiction over the Ohio River."

Indiana became a state in 1816, and its revised 1851 constitution provides that "[t]he State of Indiana shall ... have concurrent jurisdiction, in civil and criminal cases, with the State of Kentucky on the Ohio river, and with the State of Illinois on the Wabash river, so far as said rivers form the common boundary between this State and said States respectively." Ind. Const. art. 14, § 2 (1851).

■ The United States Supreme Court has recognized that two states, in conjunction with one another through respective legislative action, may opt to exercise concurrent jurisdiction. Although expressly noting its decision was confined to the precise question presented, in *Nielsen,* 212 U.S. at 320, 29 S.Ct. at 384, 53 L.Ed. at 530, the Court observed, "[w]here an act is *malum in se* prohibited and punishable by the laws of both States, the one first acquiring jurisdiction of the person may prosecute the offense, and its judgment is a finality in both States, so that one convicted or acquitted in the courts of the one State cannot be prosecuted for the same offense in the courts of the other." *Id.* The *Nielsen* Court concluded that, absent such interstate legislative mutuality, "one State cannot enforce its opinion against that of the other, at least as to an act done within the limits of that other State." *Id.* at 321, 29 S.Ct. at 385, 53 L.Ed. at 530. Thus it is apparent that Indiana is constitutionally authorized to enact laws that would extend its exercise of criminal jurisdiction over the whole of the Ohio River.

■ The remaining question is whether Indiana's present statutes implement such concurrent jurisdiction. Indiana courts have only such jurisdiction as is granted to them by the state constitution and statutes. *Carpenter v. State* (1977), 266 Ind. 98, 101, 360 N.E.2d 839, 841. The Constitution of Indiana, Art. 7, sec. 8, states: "The Circuit Courts shall have such civil and criminal jurisdiction as may be prescribed by law." The various Superior Courts, since created by the legislature, have only such jurisdiction as is granted by statute. *Wedmore v. State* (1954), 233 Ind. 545, 550, 122 N.E.2d 1, 3–4. The current Indiana criminal jurisdiction statute, Ind.Code § 35–41–1–1, applicable at the time of the charged offenses, unambiguously declares:

(a) A person may be convicted under Indiana law of an offense if:

(1) Either the conduct that is an element of the offense, the result that is an element, or both, *occur in Indiana;*

. . . .

(b) When the offense is homicide, either the death of the victim or bodily impact causing death constitutes a result under subdivision (a)(1) of this section. If the body of a homicide victim is found in Indiana, it is presumed that the result occurred in Indiana. [Emphasis added.]

■ Where statutory language " 'is plain and free from ambiguity, and the meaning expressed is definite, a literal interpretation of the statute should be adopted.' " *Rogers v. Calumet Nat'l Bank* (1938), 213 Ind. 576, 583, 12 N.E.2d 261, 264–65, (quoting *Pere Marquette R.R. Co. v. Baertz* (1905), 36 Ind.App. 408, 74 N.E. 51). When a statute is clear and unambiguous, there is no need to apply any rules of construction other than that requiring words and phrases to be taken in their plain, ordinary, and usual sense. *State Bd. of Tax Comm'rs v. Jewell Grain Co., Inc.* (1990), Ind., 556 N.E.2d 920, 921; *State v. Indiana–Kentucky Elec. Corp.* (1982), Ind.App., 436 N.E.2d 352, 356, *reh'g granted* (1982), 438 N.E.2d 782. Clear and unambiguous statutory meaning leaves no room for judicial construction. *Community Hosp. of Anderson and Madison County v. McKnight* (1986), Ind., 493 N.E.2d 775, 777.

■ We find no ambiguity in the phrase "occur in Indiana" and thus decline to engage in statutory construction to determine the meaning to be given.[3] The plain, ordinary, and usual meaning of the statutory language clearly establishes "in Indiana" as a prerequisite for Indiana criminal prosecutions and thus restricts the power to exercise criminal jurisdiction to Indiana's actual territorial boundaries. It does not authorize concurrent criminal jurisdiction for offenses committed on parts of the Ohio River outside Indiana's established territorial limits.

■ This conclusion is not altered by Indiana's Ohio River shoreline county venue statute, Ind.Code § 35–32–2–1(g), which provides:

> If an offense is committed on the portions of the Ohio or Wabash Rivers where they form a part of the boundaries of this state, trial may be had in the county that is adjacent to the river and whose boundaries, if projected across the river, would include the place where the offense was committed.

Venue and jurisdiction are not the same. *Green v. State* (1952), 230 Ind. 400, 402, 103 N.E.2d 429, 430, *cert. denied,* 343 U.S. 987, 72 S.Ct. 1084, 96 L.Ed. 1374; *Anderson v. State* (1983), Ind.App., 452 N.E.2d 173, 175. The venue statutes and rules do not confer jurisdiction but rather prescribe the location at which trial proceedings are to occur from among the courts empowered to exercise jurisdiction. The authority of the State of Indiana to institute criminal prosecutions is determined by the jurisdictional statute, Ind. Code § 35–41–1–1. The venue statute applies only to those cases properly subject to the state's criminal jurisdiction. Thus the venue statute, Ind.Code § 35–32–2–1(g), can-

not expand the scope of criminal jurisdiction prescribed in Ind.Code § 35–41–1–1.

We are also cognizant that early Indiana cases, decided before the enactment of the present "occur in Indiana" limitation in Ind. Code § 35–41–1–1(a), have asserted full concurrent criminal jurisdiction over the Ohio River. In *Carlisle v. State* (1869), 32 Ind. 55, a prosecution for murder was authorized where the "evidence tended to prove that the crime was committed on the Ohio river, outside the territorial limits of Spencer county, but opposite thereto." *Id.* at 55–56. However, the present criminal jurisdictional statute was not then in force, and the Court applied an 1852 enactment expressly providing that the Indiana counties bordering the Ohio River "shall have jurisdiction of all offenses committed against the penal laws of this State on said river, opposite to said counties respectively." *Id.* at 56. Similarly, *Dougan v. State* (1890), 125 Ind. 130, 25 N.E. 171 (violation of statute prohibiting common labor on Sunday) and *Welsh v. State* (1890), 126 Ind. 71, 25 N.E. 883 (conviction for unlicensed sale of beer), held that Indiana could properly exercise jurisdiction over the Ohio River concurrently with Kentucky, in part relying upon Section 1579, R.S.1881 which provided, *inter alia,* that the court of a county bordering on the Ohio River could assert jurisdiction over all offenses occurring upon the river opposite to that county. Historical contrasts notwithstanding, the extent of authorized criminal jurisdiction of the trial court in the present case is governed by the present criminal jurisdiction statute, Ind.Code § 35–41–1–1(a).

### Motion To Dismiss

Asserting that "it is agreed that all alleged acts giving rise to the criminal offenses

---

**3.** The dissent finds legislative intent definitively indicated by the commentary of Charles A. Thompson which accompanied publication of Ind.Code § 35–41–1–1 in the 1978 edition of West's Annotated Indiana Code. We find no evidence that this was an "official commentary" or that it was adopted or even considered by the legislature. To the contrary, it appears that actual legislative intent was opposite that urged by the dissent. The present criminal jurisdiction provision, Ind.Code § 35–41–1–1, follows without substantial revision the language recommended by the Indiana Criminal Law Study

Commission's 1974 proposed Indiana Penal Code, except for one significant omission. The Indiana General Assembly did *not* enact proposed subsection 35–11.1–1–3(c) which would have provided:

(c) This state includes the land and water and the air space above such land and water with respect to which the state has a legislative jurisdiction. Further, the legislative jurisdiction of this state shall extend to all offenses committed on the Ohio River and the Wabash River adjacent to the boundaries of this state.

charged occurred in the Commonwealth of Kentucky and outside of the State of Indiana," the defendant contends that the trial court committed error by refusing to grant the motion to dismiss all charges. Brief of Appellant to the Court of Appeals at 3. The asserted agreement is inaccurate,[4] but we interpret this claim to represent the defendant's reliance upon the trial court's finding that the charged offenses occurred on the Kentucky side of Indiana's southern boundary line. Record at 53. In this appeal, the defendant does not argue that such finding is erroneous but rather assumes its accuracy as a basis for his claim of no jurisdiction.

■■■ On appellate review, however, a trial court judgment may be affirmed if sustainable on any basis in the record, even though not on a theory used by the trial court. *Havert v. Caldwell* (1983), Ind., 452 N.E.2d 154, 157. Despite the defendant's allegation to the contrary, the record does not contain any agreement by the State that the charged offenses occurred entirely on the Kentucky side of the Indiana–Kentucky territorial boundary line. The defendant did not support his motion to dismiss with any affidavit to establish his claim that the charged offense occurred entirely outside the territorial boundaries of Indiana. The record before the trial court at the time of ruling on the motion to dismiss clearly fails to support the defendant's assertion that the charged offenses occurred outside Indiana's territorial boundaries.

■■■ It is true that an information alleging the commission of a criminal offense must state the place of the offense with sufficient particularity to show that the offense was committed within the jurisdiction of the court where the charge is to be filed. *Weaver v. State* (1991), Ind., 583 N.E.2d 136, 141; Ind.Code § 35–34–1–2(a)(7). However, upon a motion to dismiss which claims that there "exists some jurisdictional impediment to conviction of the defendant for the offense charged," Ind.Code § 35–34–1–4(a)(10), the defendant is required to prove "by a prepon-

derance of the evidence every fact essential to support the motion." Ind.Code § 35–34–1–8(f).

■■■ Because of the defendant's failure to establish that all of the charged criminal conduct necessarily occurred on the Kentucky side of the Indiana's southern territorial boundary so as to demonstrate a jurisdictional impediment to conviction, we determine that the trial court's denial of the defendant's motion to dismiss was not erroneous. In the event of trial, however, the State is required to prove territorial jurisdiction beyond a reasonable doubt, *McKinney v. State* (1990), Ind.App., 553 N.E.2d 860, 863, and will then have the burden of proving that sufficient components of each of the charged offenses occurred within the territorial boundaries of Indiana, pursuant to Ind.Code § 35–41–1–1(a)(1).

The judgment of the trial court is affirmed.

SHEPARD, C.J., and DeBRULER and GIVAN, JJ., concur.

SULLIVAN, J., dissents with separate opinion.

SULLIVAN, Justice, dissenting.

I respectfully dissent because I believe the majority has incorrectly construed the Indiana criminal jurisdiction statute, Indiana Code § 35–41–1–1. I would adopt the scholarly and well-reasoned opinion written by Judge Baker of the Court of Appeals in this case,[1] with an additional discussion of the history of our criminal jurisdiction statute which I believe clearly demonstrates why the majority is incorrect.

I do agree with the majority's analysis of both the federal and Indiana constitutional issues involved in this case. And I agree as well with the majority's conclusions that jurisdiction is only as extensive as that granted by the legislature and that venue and jurisdiction are not the same thing. But as the

4. See footnote 2, *supra*.

1. I would, however, change Judge Baker's footnote reference to the War Between the States to its correct name, the Civil War.

following history of our current criminal jurisdiction and venue statutes makes clear, our legislature has from 1852 through today authorized criminal jurisdiction over the entire Ohio River opposite Indiana.

This history starts in 1851 when our forefathers provided in our constitution as follows:

> The State of Indiana ... shall have concurrent jurisdiction, in civil and criminal cases, with the State of Kentucky on the Ohio River and with the State of Illinois on the Wabash River, so far as said rivers form the common boundary between this State and said States respectively.

Ind. Const. art. 14, § 2 (1851).

The legislature enacted a statute granting jurisdiction to the full extent of this constitutional provision in the very first session. of the General Assembly following adoption. of the new constitution:

> That the proper courts of the several counties in this State bordering on the Ohio river, and on the Wabash river as far up as said river forms the boundary line between this State and the State of Illinois, shall have jurisdiction of all offences committed against the penal laws of this State on said rivers, opposite to said counties respectively.

1 R.S.1852, ch. 14, § 93, p. 197 (the "1852 Act").

It is the 1852 Act which provided the jurisdictional authority for the prosecution of crimes committed on the Ohio River in the three cases cited by the majority: *Welsh v. State* (1890), 126 Ind. 71, 25 N.E. 883; *Dougan v. State* (1890), 125 Ind. 130, 25 N.E. 171; and *Carlisle v. State* (1869), 32 Ind. 55. The majority says that these cases were "decided before the enactment of the present 'occur in Indiana' limitation in Ind.Code § 35–41–1(a)." I think this statement is misleading. In fact, the language of the 1852 Act remained law without any change whatsoever from 1852 all the way until 1978.[2]

Meanwhile, in 1976 and 1977, following years of work by the Indiana Criminal Law Study Commission, an entirely new Indiana criminal code was enacted. See William A. Kerr, *Forward: Indiana's New and Revised Criminal Code*, 11 Ind.L.Rev. 1 (1978); William A. Kerr, *Forward: Indiana's Bicentennial Criminal Code*, 10 Ind.L.Rev. 1 (1976). One of the innovations of the new code was the creation, for the first time, of an entirely free-standing jurisdiction statute, Indiana Code § 35–41–1–1 (West 1978). This resulted in the enactment of the present "occur in Indiana" language in the jurisdictional statute but did not change or repeal in any way

---

**2.** In 1905, the legislature adopted a new Criminal Law and Procedure Act which included the language of the 1852 Act verbatim. Acts 1905, ch. 169, § 7, p. 585.

In 1971, the legislature codified this language in the new Indiana Code, again verbatim. Ind. Code § 17–1–1–84 (1971).

In 1973, the legislature enacted the following subsection as part of a new venue statute:

> If a crime is committed on any navigable waters bordering on this state, trial maybe had in the county opposite to such navigable water where the crime was committed.

Ind.Code § 35–1.1–2–1(g), as added by Acts 1973, P.L. 325, § 1. Indiana Code § 17–1–1–84 remained unchanged.

In 1976 and 1977, the legislature enacted a new criminal code, including a jurisdictional statute that, in my view and the view of the official comments to the Code, maintained the principle of jurisdiction over the entire Ohio River. See text, *infra.* Indiana Code § 17–1–1–84 remained unchanged.

In 1978, the legislature repealed Indiana Code § 17–1–1–84. Acts 1978, P.L. 2, § 1731.

In 1981, the legislature replaced Indiana Code § 35–1.1–2–1(g) with § 35–32–2–1(g) which reads as follows:

> If an offense is committed on the portions of the Ohio or Wabash Rivers where they form a part of the boundaries of this state, trial may be had in the county that is adjacent to the river and whose boundaries, if projected across the river, would include the place where the offense was committed.

Acts 1981, P.L. 298, §§ 1 and 9. This provision remains in effect today.

Thus, the 1852 Act and its successors provided both the jurisdiction and venue rules for offenses committed on the Ohio River from 1852 to 1978. Effective October 1, 1977, the jurisdiction rules were provided by Indiana Code § 35–41–1–1. The venue rules were provided by Indiana Code § 35–1.1–2–1(g) from July 1, 1978, until superceded by Indiana Code § 35–32–2–1(g) on July 1, 1981. None of these changes reduced the extent of the jurisdiction authorized by the 1852 Act.

the law created by the 1852 Act and affirmed in *Welsh, Dougan,* and *Carlisle, supra.*[3]

That there was no intent by the legislature to change the jurisdictional rules with respect to crimes committed on the Ohio River is made crystal clear by language at the outset of the official[4] commentary to the new Indiana criminal code which was published in the 1978 edition of West's Annotated Indiana Code. The official commentary provides:

> As reflected by this section, the modern view is to permit the application of a state's penal law to a transaction even though it did not occur entirely within the state.
>
> . . . .
>
> The general rule has developed that a state may exercise legislative jurisdiction over conduct which occurs within the state. However, Indiana and Kentucky have concurrent jurisdiction to impose their criminal laws upon conduct occurring on the Ohio River. *Dougan v. State,* 125 Ind. 130, 25 N.E. 171 (1890); *Welsh v. State,* 126 Ind. 71, 25 N.E. 883 (1890); *Sherlock v. Alling,* 44 Ind. 184 (1873); *Carlisle v. State,* 32 Ind. 55 (1869). See also *Memphis and Cincinnati Packet Co. v. Pikey,* 142 Ind. 304, 40 N.E. 527 (1895).

Charles A. Thompson, Commentary to Indiana Code § 35–41–1–1 (West 1978).

Because the legislature in 1852 clearly provided jurisdiction in criminal law matters over the entire Ohio River opposite from Indiana, and because the legislature did not restrict this grant of jurisdiction in any way when the 1852 Act was replaced by the 1976

Indiana Criminal Code, the State of Indiana continues to have legislative authority to enforce its criminal laws on all of the Ohio River opposite Indiana. For this reason, I believe that Judge Baker's analysis was correct and dissent from the majority's opinion.

---

3. In refuting this dissent, the majority argues that the legislature's failure to enact Indiana Code § 35–11.1–1–3(c) providing for jurisdiction over the Ohio River as proposed by the Indiana Criminal Law Study Commission indicates legislative intent to restrict the jurisdiction in effect since 1852. In response, I refer the reader to footnote 2 of this dissent. There was absolutely no reason for the 1976 or 1977 legislature to enact the provision referred to by the majority because Indiana Code § 17–1–1–84, which already provided jurisdiction over the entire Ohio River opposite Indiana, was in full force and effect. It is more reasonable to assume that the legislature did not adopt the Commission language simply because it would have been duplicative of existing law.

4. The majority takes issue with my reference to the Commentary published in West's Annotated

Indiana Code (1978) as "official comments." Perhaps these comments were not denominated as "official" by the legislature but they present a scholarly and detailed discussion of the provisions of the Indiana criminal code written by one of the very draftsmen of the code itself, Charles A. Thompson, the first Reporter of the Indiana Criminal Law Study Commission, and his successor, Bobby Jay Small. This court, *e.g., Greider v. State* (1979), 270 Ind. 281, 284, 385 N.E.2d 424, 426, the Court of Appeals, *e.g., Smith v. State* (1986), Ind.App., 489 N.E.2d 140, 141, and our brethren at the Seventh Circuit, *e.g., Williams v. Duckworth,* 738 F.2d 828, 832 (7th Cir.1984), have regarded the Commentary as authoritative. I submit that by our courts' usage, we have made these comments "official."