**SHELL OIL COMPANY, Appellant–Defendant,**

v.

**The LOVOLD COMPANY, a Partnership, Appellee–Plaintiff.**

**No. 32A01–9705–CV–154.**

Court of Appeals of Indiana.

Nov. 26, 1997.

Larry J. Kane, Karl L. Mulvaney, Phil L. Isenbarger, Nana Quay–Smith, Bingham Summers Welsh & Spilman, Indianapolis, for Appellant–Defendant.

James E. Ayers, Wernle, Ristine & Ayers, Crawfordsville, for Appellee–Plaintiff.

**OPINION**

BAKER, Judge.

In this interlocutory appeal, appellant-defendant Shell Oil Company (Shell) challenges the trial court's denial of its motion for summary judgment on appellee-plaintiff The Lovold Company's (Lovold) action to recover corrective costs under Indiana's Underground Storage Tanks Act. Specifically, Shell claims that it was entitled to summary judgment because it could not be considered an "operator" under the Act.

## FACTS

Lovold is the current owner of some property located in Brownsburg, Indiana. Before Lovold purchased the property, a gasoline station (Brownsburg Station) was operated on the property. While the station was in operation, gasoline for the underground storage tanks was purchased from an intermediate wholesaler who, in turn, purchased the gasoline from its wholesaler, Shell. Thereafter, Lovold discovered that the underground storage tanks had leaked gasoline, contaminating the soil in the surrounding area. As a result, Lovold expended $150,000 to clean the contaminated soil and remove the tanks.

On December 20, 1995, Lovold filed a civil action against Shell, pursuant to Indiana's Underground Storage Tanks Act (Act). Specifically, Lovold alleged that Shell was liable for its corrective costs under the Act because it had operated the tanks at the time the leaks had occurred. In response, Shell filed a motion for summary judgment, in which it argued that it was not an "operator" under the Act because it was not responsible for the daily operation of the underground storage tanks. Following a hearing on March 18, 1997, the trial court denied Shell's motion. Shell now appeals.

## DISCUSSION AND DECISION

Shell argues that the trial court erred in denying its motion for summary judgment. Specifically, Shell argues that it could not be liable under the Act because it did not "operate" the underground storage tanks.

In order for a party to be held liable for costs under the USTA, it must be shown that the party either "owned or operated the underground storage tank at the time" when the petroleum leak occurred. I.C. § 13–23–13–8(b). According to the statute, an operator is defined as a person "in control of, or having responsibility for, the daily operation of an underground storage tank." I.C. § 13–11–2–148(d).

Recently, another panel of this court concluded that the term "operator" was ambiguous because the legislature failed to define the words control and responsible. *Shell Oil Co., Union Oil Co. v. Meyer*, 684 N.E.2d 504, 514 (Ind.Ct.App.1997). As a result, the *Meyer* court applied rules of statutory construc-

tion, and determined that an operator was someone who had the authority to control the underground storage tanks. *Id.* at 516. Unlike the *Meyer* court, we do not conclude that the terms "control" and "responsible" are ambiguous and, therefore, subject to statutory construction.

Our rules of statutory construction forbid this court from interpreting a statute that is facially clear and unambiguous. *Benham v. State*, 637 N.E.2d 133, 136 (Ind.1994). Further, when the legislature defines a word, we are bound by that definition. *Id.* As stated above, an operator is defined as a person "in control of, or having responsibility for, the daily operation of an underground storage tank." I.C. § 13–11–2–148(d). Responsible is defined as "answerable" or "accountable." Merriam Webster's Collegiate Dictionary 998 (10th ed. 1993). Further, "control" is defined as "to exercise restraining or directing influence over." *Id.* at 252. In order to be considered an operator under the Act, therefore, Shell must have had more than the "authority to control." Rather, Shell must have exercised immediate control over or have been directly answerable for the daily operations of the storage tanks.

In the present case, nothing in the record indicates that Shell exercised such influence or was otherwise accountable for the daily operations of the storage tanks. The record reveals that the relationship between Shell and the operators of the Brownsburg station was tenuous. Shell, as a wholesaler, merely supplied gasoline to an intermediate wholesaler who, in turn, supplied gasoline to the Brownsburg station. R. at 97. However, there is no evidence that Shell had a contract with the station to supply the gasoline. R. at 98. Additionally, there is no evidence that Shell leased the facility; rather, the intermediate wholesaler, who leased the facility from a third party, sublet the station to the Brownsburg station operators. R. at 97. Finally, although Shell may have taken certain remedial actions over the past several years to ensure that the underground storage tanks would not pose a health risk to the local residents, these isolated acts were insufficient to make Shell responsible for the daily operations of the Brownsburg station's un-

derground tanks. Under these circumstances, we cannot conclude that Shell was an operator under the Act. To hold otherwise, would impose a definition that the legislature could not have intended. Because Shell could not be held liable under the Act, the trial court erred in denying its motion for summary judgment.

The denial of Shell's motion for summary judgment is reversed and remanded for proceedings not inconsistent with this opinion.

STATON, J., concurs.

ROBERTSON, J., dissents with opinion.

ROBERTSON, Judge, dissenting.

I respectfully dissent. This is enormously complex litigation. The slip opinion of this court's decision in *Shell Oil Co., Union Oil Co. v. Meyer*, 684 N.E.2d 504, 514 (Ind.Ct.App.1997) is 48 pages long and deals with the interpretation of a whole bunch of federal statutes and cases. Transfer is pending before our supreme court.

Under the doctrine of stare decisis, we follow precedent from other districts of this court and may repudiate those decisions only if strong reason exists to do so. *Lincoln Utilities, Inc. v. Office of Utility Consumer Counselor*, 661 N.E.2d 562, 565 (Ind.Ct.App. 1996), *trans. denied*. As the *Meyer* decision was comprehensively dealt with by our court, and our supreme court will have an opportunity to judge its correctness, principles of stare decisis and judicial economy prompt me to vote to affirm the present, discretionary, interlocutory appeal of the denial of summary judgment.