HENRY ZARRS, APPELLEE, V. SAMANTHA KECK ET AL., APPELLANTS, AND SPOONER R. HOWELL ET AL., APPELLEES.

FILED MAY 2, 1894.    No. 5466.

1. **Mechanics' Liens:** ESTOPPEL. A building contract between the owner and contractor provided: "The contractor hereby covenants and agrees that all materials and labor used in said building shall be promptly paid for, so that the same shall not become the subject of a lien against said premises, * * * and the owner shall have the right to retain, out of any payment due or to become due, an amount sufficient to indemnify her against any claim for materials or labor." *Held*, That this agreement did not estop the contractor from filing a lien upon the premises.

2. ———: SUBCONTRACTOR. One who furnishes material used in the construction of an improvement is not excluded from the benefits of the mechanic's lien law solely because the materials so used were furnished to a subcontractor of a subcontractor.

3. **Pleading:** MECHANICS' LIENS: APPEAL. A subcontractor brought a suit to foreclose a mechanic's lien. The owner, the

original contractor, and a material-man were made defendants. The material-man filed an answer, in the nature of a cross-bill, claiming a lien upon the premises of the owner for material furnished in the erection of the improvement. To this cross-bill the owner filed no answer. *Held,* That the owner could not be heard to object, on appeal, to the correctness of the finding and decree of the district court in favor of the material-man.

4. **Review.** Where a finding of fact is made by a district court on conflicting evidence, this court will decline to disturb such finding, unless it appears that the same is unsupported by competent evidence.

APPEAL from the district court of Buffalo county. Heard below before CHURCH, J.

*Calkins & Pratt,* for appellants.

*Thompson & Oldham* and *Dryden & Main, contra.*

RAGAN, C.

On the 25th day of May, 1889, Mrs. Samantha Keck was the owner of certain real estate in the city of Kearney, Nebraska, and upon said date she entered into a written contract with one Arthur Campbell. By the terms of this contract Campbell agreed to furnish all material and labor and erect for Mrs. Keck an annex to her hotel in said city. The hotel was to be completed by the 1st of October, 1889. As a consideration for the performance of his contract Campbell was to be paid $25,800. These payments were to be made in instalments on the first days of July, August, September, and October, each payment to be equal to eighty per cent of the value of the material and labor furnished the preceding month. The contract further provided : "It being understood that the final payment is to be made within twenty days after this contract is completely finished; provided, * * * that before each payment, if required, the contractor shall give the owner good and sufficient evidence that the premises are free from

all liens and claims chargeable to said contractor; and the owner shall have the right to retain, out of any payment then due or thereafter to become due, an amount sufficient to completely indemnify her against such lien or claim. After all such payments are made, the contractor shall refund to the owner all moneys that the latter may have been compelled to pay in discharging any lien on said premises made obligatory in consequence of the former's default. The contractor hereby covenants and agrees that all materials and labor used in said building shall be promptly paid for, so that the same shall not become the subject of a lien against said premises; * * * that he will, before each and every instalment shall become due on this contract, and before he shall be entitled to the same, furnish to the owner satisfactory written evidence that all materials furnished for and used in said building up to such time, and all labor performed thereon, has been fully paid for; and the said contractor shall not be entitled to receive, nor shall the owner be required to pay, any instalments of this contract until all obligations for labor and materials which may become the subject of a lien upon said premises shall have been fully paid and settled; * * and the owner shall have the right to retain, out of any payment due or to become due, an amount sufficient to completely indemnify her against any lien or claim for materials or labor." There was a further provision in the contract that Mrs. Keck should be entitled to damages at the rate of $20 a day for each day that the hotel remained unfinished after the first of October. To secure the faithful performance of this contract on his part Campbell executed a bond to Mrs. Keck in the sum of $25,000, signed by himself as principal and several others as sureties, among them, Henry Zarrs, the appellee in this case. Campbell sublet the excavating, masonry, and stone-work and plastering to the said Henry Zarrs under a written contract between them, in and by which Zarrs agreed to have all

the work in his contract, except the plastering, wholly completed by August 1, and to have the plastering completed by August 15.  Zarrs sublet the plastering to Peterson & Ryan, and they bought of Spooner R. Howell the materials for the plastering.

This suit was brought by Henry Zarrs against the said Samantha Keck, Arthur Campbell, Spooner H. Howell, and Peterson & Ryan to have established, by decree of court, a lien which he claimed against the said hotel for labor and material furnished therefor under his contract with Campbell, and also to establish a lien against the property for some extras which he alleges he furnished for said hotel on an oral contract made with Mrs. Keck.  During the progress of the trial, however, it was shown that this claim for extras had been settled and compromised before the bringing of this suit, and it will not be further noticed.  Mrs. Keck and Mr. Campbell answered the petition of Zarrs.  Peterson & Ryan filed an answer, in the nature of a cross-bill, claiming a balance due them of $760, for labor and material furnished in the erection of the hotel in pursuance of the contract with Zarrs, and prayed that the same might be declared a lien on the premises of Mrs. Keck.  Howell filed an answer, in the nature of a cross-bill, claiming a balance due him of $391.94, for material furnished by him to Peterson & Ryan and used by them in the plastering of said building, and prayed that the same might be made a lien upon the premises of Mrs. Keck. Neither Campbell nor Mrs. Keck filed any answer whatever to the cross-petitions of Peterson & Ryan or Howell. The court below rendered a decree in favor of Howell, Peterson & Ryan, and Zarrs, and made the amounts found due those parties liens upon the premises of Mrs. Keck. From this decree Arthur Campbell and Mrs. Keck appeal.

1. We will first dispose of the appeal of Campbell. His objection to the decree is thus stated by his learned counsel in their brief: "We cannot escape the suspicion

that in the interval which elapsed between the trial of the
case and its final decision the learned judge had forgotten
the controversy made by the pleadings and evidence be-
tween the plaintiff and the defendant Campbell, and over-
looked the same in making his finding." Zarrs in his
petition claimed that there was a balance due him from
Campbell, for labor and material furnished, of $3,398, but
on the trial it was clearly made to appear, and conceded by
Zarrs, that that amount should be reduced to at least
$2,368. The court, by its decree, allowed Campbell $1,606.
The court made no special findings, and the evidence as to
the merits of the respective claims of Zarrs against Camp-
bell and Campbell against Zarrs was conflicting. Camp-
bell resisted, both by his pleadings and evidence, the claim
made by Zarrs and sought to set off as against the claims
of Zarrs damages for alleged inferior workmanship and
material furnished by Zarrs; damages for delay in not
completing his work at the time agreed in his contract. He
also pleaded certain payments had been made to Zarrs which
should go to reduce the amount claimed by the latter, and
finally he claimed that instead of his being in debt to Zarrs
the latter owed him $1,606, for which he prayed judg-
ment. We cannot say, after a careful reading of this evi-
dence, that the district court was wrong in finding that
Campbell was indebted to Zarrs in the sum of $1,606, and
since it does not affirmatively appear that this finding is not
supported by competent evidence we decline to disturb it.

2. We now proceed to the consideration of the objec-
tions urged by Mrs. Keck to the findings and decree. She
objects to the decree and finding in favor of the appellee
Howell on this ground: That since it appears from the
record that the claim of Howell is for material furnished
by him to a subcontractor of a subcontractor, therefore
Howell is not entitled under the statutes of the state to a
lien for the value of the materials so furnished. In *Live-
sey v. Brown*, 35 Neb., 111, it is said: " Under the me-

chanic's lien law of this state, the person who furnishes any material for the construction of a building by virtue of a contract, express or implied, with the owner thereof, is entitled to a lien thereon for the amount due for the same," upon complying with the statute. And in *Pomeroy v. White Lake Lumber Co.*, 33 Neb., 243, it is said: "The right of a material-man to a lien upon a building does not result from the contractor being an agent of the owner, but from having furnished such contractor materials which were used in the erection of the building." In the case at bar the evidence is undisputed that Howell furnished material used in the plastering of Mrs. Keck's building and that the value of this material so furnished was $391.94. We perceive no reason for such a construction of the statute as would exclude Mr. Howell from its benefits simply because he furnished material to a subcontractor of a subcontractor.

3. Mrs. Keck alleges here certain objections to the finding and decree of the court in favor of Peterson & Ryan, the substance of which is that the amounts allowed Peterson & Ryan by the court were erroneous under the evidence. As already stated, Mrs. Keck filed no answer to the cross-bill of Peterson & Ryan in the district court. As against her, then, the averments in this cross-petition were to be taken as true, as every material averment in a petition not denied by the answer for the purposes of the action will be taken as true. (*Livesey v. Brown, supra.*) Mrs. Keck therefore is in no position to assail the correctness of the court's finding in favor of Peterson & Ryan.

4. Another contention of Mrs. Keck is that as Zarrs was surety on the indemnity bond of Campbell, therefore he, Zarrs, is estopped from maintaining this suit. It is said that Campbell himself could not file a lien against these premises, and that therefore the surety on his indemnity bond cannot. This leads us to a construction of the contract between Campbell and Mrs. Keck. Is there any-

thing in that contract which would preclude or estop
Campbell from filing a lien against this property to secure
a balance due him had he himself performed all the labor
and furnished all the material in the erection of the hotel?
In other words, did Campbell, by his contract, agree that
he would not file a lien against the premises of Mrs. Keck?
That portion of the contract which it is claimed would
preclude Campbell from filing a lien against this property
has been quoted above. We think a fair construction of
it amounts to this: "That Campbell would furnish the ma-
terial and labor and build this hotel according to the plans
and specifications and deliver it to Mrs. Keck by the 1st
of October, 1889, free and clear of all liens for either labor
or material furnished in its construction. There is no
provision in this contract by which Campbell expressly
agreed to waive his statutory right to a lien on the prem-
ises; nor can such an agreement be fairly inferred from the
language used. The very object of taking an indemnity
bond was that Campbell should complete the building ac-
cording to the contract and that he should save and keep
Mrs. Keck harmless from any liens that material-men or
laborers might file against the building. By the terms of
the contract Mrs. Keck was allowed at all times to retain
in her hands $5,160, for the express purpose of protecting
herself from the claims of laborers and material-men.
For aught that appears from the record she has this money
in her hands now; and it does not appear from the record
that the total amount of money paid out by Mrs. Keck
towards the erection of this hotel added to the amount of
all the liens claimed by parties to this suit would equal,
much less exceed, the contract price for the building. It
is not claimed by Mrs. Keck that the building has not been
completed; but her claims are that she is entitled to a dis-
count of $525, by reason of defective workmanship and
material, and she further claims that she is entitled to dam-
ages at the rate of $20 a day for ninety-six days, that be-

ing the time that elapsed after October 1 and before the completion of the building. In *Murphy v. Morton*, 20 Atl. Rep. [Pa.], 1049, the contract between the owner and the contractor stipulated that before the last payment should become due the contractor should furnish releases from all persons having a right of lien against the property for any work or materials. It was urged in that case that this contract estopped the contractor from filing a lien upon the building and that therefore a subcontractor was estopped from filing a lien. The supreme court of Pennsylvania, in construing this contract and in speaking to the point made, said: "There is here no covenant on the part of the contractor not to file a lien; on the contrary, there is a recognition of the right of subcontractors and material men to lien the building. All it [the contract] amounts to is that before the contractor shall receive his last payment he shall furnish releases from all persons entitled to file liens. Until the contractor complies with this stipulation he cannot get his money." In the case at bar it seems to have been anticipated by Mrs. Keck that subcontractors, laborers, or material-men might file liens on the property, and for that very reason she retained in her hands what she deemed a sufficient sum of money to discharge all such liens and thus protect herself. We conclude, then, that by the contract between Mrs. Keck and Campbell the latter would not be estopped from filing a lien upon the building, and that if he is not, the surety on his indemnity bond is not estopped. (See Jones, Liens [2d ed.], sec. 1502, and cases there cited.)

5. Another objection urged by Mrs. Keck to the finding and decree in favor of Zarrs is that the court erred in not allowing her damages for the delay in completing her building. As already stated, this delay amounted to ninety-six days, and the contract provided that Campbell should forfeit for each day's delay $20. Counsel for Mrs. Keck contend that since the evidence shows that Mrs. Keck had the building rented, to take effect from October 1, at the

rate of $350 a month, she should at least be allowed damages for the loss of rents.    All that has been said as to the conflict in the evidence between Campbell and Zarrs applies to the case as between Mrs. Keck and Zarrs.    The evidence as to the cause of the delay was conflicting.    We cannot say in the first place but that the court did allow Mrs. Keck $762 on account of this delay, as the evidence would sustain a finding in Zarrs' favor for $2,368 and the court only allowed him $1,606.    If the court did not allow Mrs. Keck anything by reason of the delay, we cannot say from the evidence that the court was wrong.    We find no error in the record and the decree is

AFFIRMED.