Pere Marquette R. Co. *v.* Baertz—36 Ind. App. 408.

## PERE MARQUETTE RAILROAD COMPANY OF INDIANA *v.* BAERTZ.

[No. 5,240.    Filed April 28, 1905.    Rehearing denied June 30,
1905.    Transfer denied October 31, 1905.]

1. STATUTES.—*Construction.*—Where the language of a statute
is plain and definite, a literal interpretation should be adopted;
and supposed omissions can not be supplied.    p. 414.

2. SAME.—*Liens.—Creation of.*—Statutes creating liens in favor
of laborers and other artisans are construed as remedial.    p. 414.

3. LIENS.—*Statutes.—Construction.*—Where the plaintiff has
shown himself entitled to a lien, the remedy provided will be
construed liberally in his favor to obtain the payment of his
claims.    p. 415.

4. SAME. — *Laborers'.—Railroads.—Subcontractors' Servants.—*
*Notice.*—Under §7265 Burns 1901, Acts 1889, p. 257, §6, the
laborers employed by a railroad subcontractor in the second
degree are entitled to laborers' liens on such railroad for serv-
ices performed, and their actual performance of labor on the
railroad is notice to the company.    p. 415.

5. SAME.—*Laborers'.—Assignment.—"Time Checks."*—Where the
plaintiff, at the suggestion of the maker, purchased from la-
borers on a railroad their "time checks" showing the amounts
due them for labor performed, such purchase constitutes an
assignment of such claims together with the statutory liens
securing same.    p. 419.

6. SAME. — *Laborers'. — Personal Judgment for. — Railroads. —*
*Operation.—Special Findings.*—An admission by defendant
railroad company in open court that it was at the time of the
trial operating its road sustains a finding that the right of way
and other property of such defendant is necessary in its use as
a common carrier and that a lien thereon for labor performed
can not be foreclosed and that a personal judgment ought to be
rendered in lieu of a decree of foreclosure.    p. 420.

7. SAME.—*Laborers'.—"Time Checks."—Accounts.*—A time check
issued by a railroad subcontractor to a laborer showing the
amount of work performed and the amount due such laborer is
in the nature of an account and is assignable. *Naglebaugh* v.
*Harder & Hofer, etc., Co.,* 21 Ind. App. 551, distinguished.
p. 420.

8. RAILROADS.—*Sales of.*—A railroad can not be sold in parts,
but must be sold as an entirety.    p. 420.

9. RAILROADS.—*Laborers' Liens.—Personal Judgment.*—Where, before a laborer's lien is foreclosed, the railroad upon which such labor has been performed begins operation as a common carrier, such laborer is entitled to a personal judgment against such company instead of a decree of foreclosure. p. 421.

10. APPEAL AND ERROR.—*Injury Not Shown.—Railroads.—Personal Judgment.*—Where it does not appear that any injury was done to a railroad company by the trial court's refusal to modify a personal judgment rendered against it in favor of a laborer for services rendered, such action does not constitute available error. p. 422.

From Laporte Superior Court; *Harry B. Tuthill,* Judge.

Suit by Charles Baertz against the Pere Marquette Railroad Company of Indiana. From a decree for plaintiff, defendant appeals. *Affirmed.*

*W. T. Krueger* and *James F. Gallaher,* for appellant.
*C. R. & J. B. Collins,* for appellee.

MYERS, J.—In the Laporte Superior Court this suit was begun by appellee against appellant and a number of others, to enforce payment of thirty-nine claims for work and labor performed by as many different people in the construction of certain abutments, walls, bridges and embankments and making excavations, etc., for a roadbed and tracks in the construction of a railroad through Laporte and Porter counties in this State, by the foreclosure of an alleged mechanic's lien held by appellee, covering appellant's roadbed and right of way, and appurtenances thereto belonging. The facts leading up to, and upon which appellee claims to be the owner of said claims, as also the proceedings under which he claims to be vested with such lien on appellant's property, appear in the finding of facts.

The cause was tried upon an amended complaint, consisting of two paragraphs; and, as the special findings contain the material facts necessary to present all the material questions of law here arising, we omit a synopsis of the facts as averred in the complaint and briefly state the facts as they appear in the special findings: (1) On the

24th day of April, 1903, the defendant was a corporation organized under the laws of the State of Indiana, and owned a right of way for a railroad extending from the village of New Buffalo, in the state of Michigan, in a southwesterly direction through the counties of Laporte and Porter, in the State of Indiana, to the village of Porter, in said Porter county, and was in the possession of the same, and was building and operating a railroad over the same.

(2)  On April 24, 1903, defendant entered into a contract with the Marquette Construction Company to grade, build embankments, make excavations, build bridges, trestlework, works of masonry and other structures on said right of way, preparatory for defendant's railroad track. Pursuant to the terms of said contract, on the same day, said Marquette Construction Company sublet said work to McArthur Brothers Company.  Subsequently, and pursuant to said contract between appellant and the Marquette Construction Company and between the Marquette Construction Company and McArthur Brothers Company, said McArthur Brothers Company contracted with the Tefft-Ross Engineering Company, a partnership composed of Henry B. Tefft and William C. Ross, for the construction of concrete work and masonry for bridges at certain points in Michigan township, Laporte county, Indiana.

(3)  Said Tefft-Ross Engineering Company commenced and completed said work.

(4)  In accordance with the terms of said contract the Tefft-Ross Engineering Company employed the several defendants, in the complaint mentioned as "laborers," who performed work and labor in the erection of said concrete work and excavations in said Michigan township, Laporte county, of the value of $348.92, which sum was due and payable on the 20th of September, 1903, and is still due and unpaid.

(5) After performing said work and labor said "laborers," for a good and valuable and sufficient consideration, assigned and sold to the plaintiff herein their several claims for said work and labor so done and performed. Plaintiff is the owner of the several claims and of the amount due said "laborers," as also all liens and other rights and privileges held by reason of such employment and work so performed, and to which they were entitled by reason of such work and labor; that on account of said assignments there is due plaintiff, as the assignee of said "laborers," $348.92 of principal and $4.36 of interest, making a total due of $353.28.

(6) Within sixty days of the doing of said work by said "laborers" the plaintiff filed in the office of the recorder of Laporte county, Indiana, his notice to said Pere Marquette Railroad Company of Indiana, and all others concerned, of his intention to hold a lien on the roadbed and right of way, together with all appurtenances thereto belonging, and of the right of way, franchises and roadbed of said Pere Marquette Railroad Company of Indiana situate in Laporte county, Indiana. Said notice stated that plaintiff claimed said lien by reason of his being such assignee as aforesaid. Said notice was so filed for record on the 17th of September, 1903, and was duly recorded, and plaintiff has been compelled to employ an attorney at a cost of $100.

(7) Said "laborers" have no titles or interest in said claims or in said liens.

(8) Plaintiff commenced this action on the 24th of September, 1903, and within one year of the filing of the notice of said lien.

(9) The defendant Pere Marquette Railroad Company of Indiana continues as aforesaid in the possession and ownership of said right of way and franchises of said railroad company.

(10) "The plaintiff has and holds a valid and subsisting lien on said right of way and franchises and appur-

tenances, described as aforesaid, for work and labor done and performed respectively by said laborers, as heretofore set out, for the amount of $348.92 and interest and attorney fees.

"(11)   Said plaintiff is entitled to recover interest on his claim herein from the 20th day of September, 1903, and is entitled to have said lien foreclosed.

"(12)   The work and labor described in these findings as having been performed, is the same work and labor described and alleged as having been performed in said notice of lien as aforesaid.

"(13)   Said right of way of said defendant Pere Marquette Railroad Company of Indiana is a part of the right of way and station grounds of said company, and is used by said company in the prosecution of its business as a common carrier of freight and passengers, and is necessary to the proper and successful operation and conduct of its corporate business as such common carrier.

"(14)   The lien aforesaid can not be foreclosed against the same, and the property sold for the payment of said claim without interfering with the rights and interest of the public therein.   By reason of such facts the plaintiff, if he is entitled to recover, ought to be entitled to recover a personal judgment against said defendant railroad company for the sum so found due."

Upon the above finding of facts the court stated the following conclusions of law:   "(1)   The plaintiff has a valid and subsisting lien on the right of way and franchises of said defendant Pere Marquette Railroad Company of Indiana, situate within the limits of Laporte county, Indiana, and upon all works and structures, grading, embankments, excavations for tracks, bridges, trestlework and works of masonry that are upon such right of way, and such franchises within the limits of said Laporte county, Indiana, in the amount of $453.28.   The plaintiff is entitled to have said lien enforced and foreclosed.

"(2)  By reason of the fact that said right of way and franchises are a part of the right of way, franchises and station grounds of the defendant Pere Marquette Railroad Company of Indiana, a corporation and a common carrier of freight and passengers, and are so used and are necessary to the proper and successful operation of its railroad and the conduct of its corporate business, the lien aforesaid can not be foreclosed against the same, and the property sold for the payment of said judgment without interfering with the rights and interests of the public therein, and the plaintiff is therefore entitled to a personal judgment against the defendant Pere Marquette Railroad Company of Indiana for the sum of $453.28. ·

"(3)  The defendants, except the Pere Marquette Railroad Company of Indiana, have no interest in this controversy."

Upon the conclusions of law thus stated, the court rendered a personal judgment against defendant Pere Marquette Railroad Company of Indiana for $453.28.  Thereupon said defendant moved to modify said judgment so as to eliminate therefrom all that portion of the same as makes the judgment personal against it, which motion was overruled, and exception reserved.  Said defendant then filed its motion for a new trial, assigning as reasons therefor:  (1 and 2) That the decision of the court is contrary to law and not sustained by sufficient evidence; (3 and 4) each of the findings is contrary to law and not sustained by sufficient evidence.  This motion was overruled and appeal prayed and granted.

It might be well here to state that by the averments of the complaint it appears that, at the time of filing the same, the railroad was not completed and not in operation in Laporte county; but this variation as to this allegation in the complaint and the finding of facts on that subject does not affect the first and ruling question here presented, not only by the demurrer to the complaint, but by the mo-

tion for a new trial as well. That question is: Did the assignors of appellee come within the class of persons entitled to liens as provided by §7265 Burns 1901, Acts 1889, p. 257, §6, or, in other words, do they come within the act approved March 6, 1883 (Acts 1883, p. 140), as subsequently amended (§7255 *et seq.* Burns 1901)?

In giving force to a statute, courts should look to the language used by the lawmaking power as expressive of its will; and where this language is plain and free 1. from ambiguity, and the meaning expressed is definite, a literal interpretation of the statute should be adopted. Black, Interp. of Laws, p. 35. It is not within the province of the court to take from or to enlarge the meaning of a statute by reading into it language which will, in the opinion of the court, correct any supposed omissions or defects therein. As has well been said in the case of *Davis* v. *Elliott* (1893), 7 Ind. App. 246: "The rights of the parties are to be determined not by what the legislature might well have done, but by what it has actually done." *State, ex rel.,* v. *Aetna Life Ins. Co.* (1889), 117 Ind. 251; Black, Interp. of Laws, p. 37.

"The creation of liens and their incidents is a legislative matter. * * * The statute must determine the character and extent of the lien." *State, ex rel.,* 2. v. *Aetna Life Ins. Co., supra.* 1 Jones, Liens (2d ed.), §§97-112. In ascertaining a legislative intention expressed in general words, for the purpose of giving it effect, the court is limited to the fact as to what they intended to do, and not what they have done. The right to a mechanic's lien "is one of purely statutory creation," and is a special privilege or right given to one class, and not enjoyed by others; and, while such statutes must be construed and enforced as remedial in their character, they can not be extended to include cases

not within their scope, "however meritorious they may be. *Copeland* v. *Kehoe* [1880], 67 Ala. 594; *Rogers* v. *Currier* [1859], 13 Gray 129; *State, ex rel.,* v. *Aetna Life Ins. Co.* [1889], 117 Ind. 251." *Morris* v. *Louisville, etc., R. Co.* (1890), 123 Ind. 489. See, also, *Cincinnati, etc., R. Co.* v. *Shera* (1905), *ante,* 315.

It is not the policy of courts to require of persons who are within the class protected by mechanic's lien statutes anything more than a compliance therewith, and 3. upon the establishment of their liens, or when they clearly establish their right to such liens, the remedy provided will be given a liberal construction in favor of such lien holders, or, as the court has well said in the case of *McNamee* v. *Rauck* (1891), 128 Ind. 59: "The trend of the later decisions, as well as of legislation, is in the direction of a liberal enforcement of the law giving mechanics and material men a lien upon property made valuable by their labor and material. In *DeWitt* v. *Smith* [1876], 63 Mo. 263, it is said: 'The courts at one time were inclined to hold that enactments for mechanics' liens were in derogation of the common law, and their provisions should therefore be construed strictly against those who sought to avail themselves of their benefits. But the better doctrine now is, that these statutes are highly remedial in their nature, and should receive a liberal construction to advance the just and beneficent objects had in view in their passage.'" *Midland R. Co.* v. *Wilcox* (1890), 122 Ind. 84; *Clark* v. *Huey* (1895), 12 Ind. App. 224.

Section 7265, *supra,* provides: "All persons who shall perform work or labor in the way of grading, building embankments, making excavations for the track, 4. building bridges, trestlework, works of masonry, fencing or any other structure, or who shall perform work of any kind in the construction or repair of any railroad, or part thereof, in this State; * * *

whether such work or labor be performed, or such material furnished, in the pursuance of a contract with the railroad corporation building, repairing or owning such railroad, or whether such work or labor be performed, or material furnished, in pursuance of a contract with any person, corporation or company engaged as lessee, contractor, subcontractor or agent of such railroad corporation, in the work of constructing or repairing any such railroad, or part thereof, in this State, may have a lien to the extent of the work or labor performed, or material furnished, or both, upon the right of way  *  *  *  of such railroad corporation, within the limits of such county."

We are now considering the question as if the persons who actually performed the work and labor, as stated in the special finding of facts, were before us, and for the time being eliminating the question of their right to assign their claim or the title. thereto or lien to appellee as assignee.

The contention of appellant is that a subcontractor in the second degree is not included in the class given a lien by §7265, *supra,* and that the laborers employed by such contractor have no better right to a lien than their employer. If this theory be correct, then this case must be reversed. We can not agree with appellant's contention.

From the careful reading and study which we have given §7265, *supra,* it is our opinion that this statute expressly gives protection to all persons who actually perform work and labor in the construction of a railroad, or that part thereof, as expressly stated in the statute, regardless of whether it was performed under the supervision of the railroad company itself or any other person, company or corporation, by giving them a lien upon the right of way and franchises of such railroad corporation, provided such work and labor was performed in pursuance of some recognized authority originally emanating from or authorized by such railroad corporation. And the words "in pur-

suance of a contract," used in the statute, may be construed as a means of fixing the lawful authority under which such work and labor was performed.

It is very difficult to harmonize the decisions of the various states, for the reason that each state seems to have adopted its own peculiar law and state policy. A review of the vast number of authorities upon the subject now under consideration would involve a critical statement of the facts of each case and the writing of an opinion of unnecessary length. However, we will refer to a case or two which may furnish some light.

Sections 3314, 3315 R. S. 1898 of Wisconsin, give a lien to a principal contractor, subcontractor or employe of either, "who performs or procures to be performed any work or labor * * * for or in or about the erection, construction," etc., of such improvements as are here involved; and the supreme court of that state, in construing the statute in a lengthy and well-considered opinion, after clearly drawing the dividing line and pointing out the distinction between contractors, subcontractors, employes and laborers, and after referring to a number of decisions, says "there is no distinction between the term laborer and the term employe as regards the element of personal service," and holds that a subcontractor and an employe belong to different classes as to their right to lien privileges, the former not being entitled to a lien while the latter is so entitled. *Farmer* v. *St. Croix Power Co.* (1903), (Wis.), 93 N. W. 830.

In *Duignan* v. *Montana Club* (1895), 16 Mont. 189, 40 Pac. 294, on the question of a lien in favor of the subcontractor of a subcontractor under the Montana law providing: "All persons furnishing things, or doing work, as provided for by this chapter, shall be considered subcontractors, except such as have therefor contracts directly with the owner or proprietor, his agent or trustee," the provision of the chapter being: "Every mechanic, builder,

lumberman, artisan, workman, laborer or other person who shall do or perform any work or labor, \* \* \* upon complying with the provisions of the chapter, shall have \* \* \* a lien upon such building, \* \* \* town lots," etc., the court held that "a subcontractor of a subcontractor may furnish things or do work as provided for in the chapter. Therefore a subcontractor of a subcontractor is included by the statute \* \* \* · as simply a subcontractor."

In *Farmers Loan, etc., Co.* v. *Canada, etc., R. Co.* (1891), 127 Ind. 250, 257, 11 L. R. A. 740, it is said: "We do not believe that a laborer, working by the day, or a material man, who delivers ties or lumber, is a subcontractor within the meaning of our lien law." From the syllabus to the case of *Mundt* v. *Sheboygan, etc., R. Co.* (1872), 31 Wis. 451, we take the following: "Section 57, Tay. Stats., 1051, provides that whenever any laborer upon any railroad \* \* \* shall have a just claim or demand for labor performed on such railroad, against any person being contractor on such railroad with the railroad company, such railroad company shall be liable to pay such laborer, etc. Held, that the words 'contractor with the railroad company' do not necessarily restrict the remedy to claims against persons who have contracted directly and immediately with the company; but they may be understood as describing all persons who, by means of laborers in their employ, prosecute work upon the railroad, under the primary direction and authority of the company, by virtue of any contract which connects them with the company, though indirectly, mediately or remotely."

For other cases tending to support the theory of our conclusion, see *Colter* v. *Frese* (1873), 45 Ind. 96; *Barlow Bros. Co.* v. *Gaffney* (1903), 76 Conn. 107, 55 Atl. 582; *Zarrs* v. *Keck* (1894), 40 Neb. 456, 58 N. W. 933.

The persons who actually did the work in constructing the railroad, as averred in the complaint and as found by

the court in its special finding of facts, were within the statute and entitled to a lien, and the fact that they performed the labor was notice to the railroad company.

5. It appears from the evidence that thirty-nine of these laborers received what were termed "time checks," of which a blank form is as follows:

"Tefft-Ross Engineering Company, Chicago. ........, 1903. No. ....... Mr..........has............Dollars for work done in the month of July, 1903, as follows: Hours worked........ Rate $................ Amount $................ Deduction: Board........ Commissary............ Orders............ Total deductions $............. Balance due $......... This time check is not transferable, and is due and payable at the office of Tefft-Ross Engineering Company, Michigan City, on the .........., 1903. ...................., Supt."

These checks were all dated in July, 1903, and issued to the various parties with the blanks filled according to the amount due, hours worked, rate per hour, etc., and indorsed on the back by the laborer to whom issued, and delivered to appellee, who testified that he bought and paid for the time evidenced by these "checks." And the evidence shows, without question or contradiction, that appellee purchased these checks at the suggestion and consent of the maker thereof. In our opinion the evidence was sufficient to show an assignment of the claims of such laborers, and to carry with it the lien. *Midland R. Co.* v. *Wilcox, supra; McElwaine* v. *Hosey* (1893), 135 Ind. 481; *Trueblood* v. *Shellhouse* (1898), 19 Ind. App. 91.

We have carefully considered the evidence in this cause, and it clearly sustains appellee's contention, and fully sustains the decision of the court.

Appellant in its argument relative to its motion for a new trial insists that special findings numbered five, ten, thirteen and fourteen are not sustained by the evidence.

What has been said in regard to the assignment of these labor claims is applicable in support of findings numbered

five and ten. As to findings numbered thirteen and fourteen, it appears from the record that upon the trial of this cause it was agreed, in part, to expedite the trial, "that since the performance of said work and labor said defendant has been running work-trains on said railroad; that plaintiff finished said work and labor on October 17, 1903." The facts thus agreed to were facts to be considered by the court, and are sufficient to sustain findings numbered thirteen and fourteen.

Appellant contends that the "time checks" issued were illegal, and therefore in the hands of appellee not enforceable even against the party issuing the same. These "checks," as we construe them, under the evidence, were not issued in payment for any work or labor done or to be done by such employes, but are more in the nature of a statement of account, or an acknowledgment of amount due on the part of the party issuing the same to the party to whom issued. The case of *Naglebaugh* v. *Harder & Hofer, etc., Co.* (1899), 21 Ind. App. 551, is not in point.

Appellant also insists that the court erred in overruling its motion to modify the judgment. It appears that at the time the judgment was entered appellant was running its trains over that part of the road appellee's assignors had assisted by their work and labor in constructing; and it also appears that that part of the road so constructed was a part of the general system of appellant's railroad extending across Laporte county, Indiana, and east and north into the state of Michigan. It is the settled law of this State that a continuous line of railroad is to be treated as an entirety, and when in operation must be sold as an entirety, and not in parts. *Farmers Loan, etc., Co.* v. *Canada, etc., R. Co., supra,* and cases cited.

In *Louisville, etc., R. Co.* v. *Boney* (1889), 117 Ind. 501, 3 L. R. A. 435, the court in passing upon the question

of enforcing such lien says: "The plaintiff in the present case acquired a mere statutory lien upon so much of the roadbed as he had constructed. The statute provides that the lien may be foreclosed, but it makes no provision for the sale of the franchise, or of the road as an entirety, or of anything that would in effect destroy or impair the use of the franchise. The statutes regulating the construction and operation of railroads within the State, plainly contemplate that the power to condemn lands and construct and operate railroads shall be confided to railroad corporations. There is no provision by which an individual citizen may condemn land for railroad purposes, nor is it contemplated that lands condemned and used for such purposes may afterwards be sold out on execution or by order of the court, and become the property of an individual, so long as the corporation is not dissolved and continues in the use of its franchise and property. The statute, unlike that which authorizes railroad companies to execute mortgages on their property and franchises, gives the contractor a lien, and nothing more. As it appears in the present case that the debt remains unpaid, the lien affords the basis for the exercise by a court of chancery of its flexible jurisdiction to coerce payment of the debt. The legislature doubtless deemed it the wiser course to leave the method of coercing payment in each case to the court, rather than to prescribe a method which might be suited to one case and not to another. While the corporation is solvent, with property and officers and agents, subject to the order and process of the court, within the State, a court of chancery can not be without expedients for coercing payment out of any money or property which the corporation itself might have applied to that purpose." Under the authority of this case and that of *Lake Erie, etc., R. Co.* v. *Bowker* (1894), 9 Ind. App. 428, and cases there cited,

Chicago, etc., R. Co. *v.* Hare—36 Ind. App. 422.

the court did not err in overruling appellant's motion. And for the further reason that it does not appear that 10. the action of the court, in so rendering judgment, in anywise damaged or injured appellant, and, under the settled rules of law of this State, where it appears from the entire record in the cause that a correct result was reached, the judgment will not be disturbed on appeal.

Finding no error in the record, judgment affirmed.